# IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

DENNIS MALIPURATHU,                )
                                   )
            Petitioner,            )
                                   )
                                   )      CIV-14-397-M
v.                                 )
                                   )
JANET DOWLING, Warden,             )
                                   )
            Respondent.            )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner is challenging the convictions for Distribution of Controlled Dangerous Substance within 2000 Feet of a Child Care Facility entered in the District Court of Custer County, Case No. CF-2007-296, and Conspiracy to Deliver a Controlled Dangerous Substance entered in the District Court of Custer County, Case No. CF-2007-313. Respondent has responded to the Petition and filed the relevant state court records, including the transcript of Petitioner's drug court termination hearing (hereinafter "TR__") and the original record (hereinafter "OR__"). The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Petition be denied.

## I. Procedural History

On May 18, 2009, Petitioner appeared in court with his attorney and entered a guilty plea to felony charges of Distribution of Controlled Dangerous Substance within 2000 Feet

of a Child Care Facility, after former conviction of two or more felonies, and Conspiracy to Deliver a Controlled Dangerous Substance, after former conviction of two or more felonies. Pursuant to a plea agreement, sentencing was deferred in order to allow Petitioner the opportunity to participate in the Washita/Custer County Drug Court Program ("Drug Court Program").[1] Under the terms of the plea agreement, Petitioner would be sentenced to two, concurrent, six-year terms of imprisonment, suspended, upon successful completion of the Drug Court Program. If Petitioner did not successfully complete the Drug Court Program, he would be sentenced to two, concurrent 15-year terms of imprisonment.

On May 14, 2010, the State filed an Amended Application to Terminate Drug Court Participation and Sentence Defendant in both cases. In the applications, the prosecutor alleged that Petitioner had violated the rules and conditions of the Drug Court Program by being "discharged from the inpatient treatment facility at D.A.R.P. Foundation, for violation of program rules" and by being "discharged from New Hope of Mangum after violating program rules." The prosecutor noted that Petitioner had been "suspended from the Custer/Washita County Drug Court Program pending termination."

A hearing on the Amended Applications was conducted before Judge Goodwin on

---

[1]The Oklahoma Drug Court Act authorizes each district court in the State to establish a drug court program. Okla. Stat. tit., 22, § 471.1(B). "Drug Court is a type of diversionary sentence, which expedites the criminal case and requires successful completion of the plea agreement in lieu of incarceration." Looney v. State, 49 P.3d 761, 763 (Okla. Crim. App. 2002). "To the extent that a defendant's sentence is delayed pending his participation in Drug Court, these cases are comparable to situations where a defendant receives a deferred sentence. The termination of a defendant from Drug Court is analogous to an acceleration of a deferred sentence. . . . The consequence of the termination from Drug Court is to impose the sentence negotiated in the plea agreement." Id. at 763-64.

May 17, 2010. Petitioner was represented by counsel at the hearing. At the conclusion of the termination hearing, Judge Goodwin granted the State's Amended Application, terminated Petitioner from the Drug Court Program, and sentenced Petitioner pursuant to his plea agreement to 15 years of imprisonment in each case, to be served concurrently. Petitioner appealed the Drug Court termination.

Petitioner asserted in his first ground that the district court abused its discretion by prematurely terminating him from the Drug Court Program. Response, Ex. 1 (Brief of Appellant). As a second ground for relief, Petitioner asserted that he was denied effective assistance of counsel at the Drug Court Program termination hearing. Specifically, Petitioner contended that his attorney failed to subpoena or produce "crucial documents" consisting of Petitioner's "Joint Petition" in a state worker's compensation case and Petitioner's in-take application to the D.A.R.P. Foundation. Response, Ex. 1, at 27.

In a third ground, Petitioner asserted that his termination from the Drug Court Program was "based on religious grounds" which "violated [his] right to due process and was an abuse of discretion." Response, Ex. 1, at 30. In his fourth ground, Petitioner contended that the district court failed to comply with state law in terminating him from the Drug Court Program because the district court did not adequately explain the reasons for the termination and did not make a factual finding that disciplinary sanctions were insufficient to gain compliance, and thus deprived him of due process.

In his fifth ground, Petitioner asserted that the district court abused its discretion and violated his due process rights "by essentially terminating [him] from drug court for a

violation for which [he] had already been sanctioned." Response, Ex. 1, at 42. In ground six, Petitioner asserted he was denied his Sixth Amendment right of confrontation at his Drug Court termination hearing. Petitioner's Confrontation Clause claim was based on the testimony of a witness from New Hope of Mangum at the termination hearing. In ground seven, Petitioner contended that the cumulative effect of the errors presented in the foregoing six grounds deprived him of due process. The State of Oklahoma responded in opposition to each of these grounds.

In a summary opinion issued May 2, 2012, the Oklahoma Court of Criminal Appeals ("OCCA") affirmed the Drug Court termination and sentencing. Based on its consideration of the state law governing drug court terminations, Okla. Stat. tit. 22, § 471.7(E), and the court's previous holding that such terminations are discretionary, the OCCA found that Petitioner had not shown an abuse of the district court's discretion.

With respect to Petitioner's first ground, the OCCA found that Petitioner admitted he was aware of the terms and conditions of the Drug Court Program when he agreed to participate in the program. The court further found that "[g]iven numerous opportunities to comply with the terms and conditions of the program, [Petitioner] was sanctioned at least twice during the duration of his program participation. He also acknowledges that he was given several chances to complete the program after being terminated from three jobs, when program policy dictated that termination should result upon being terminated from one job. The record is replete with testimony and reports that [Petitioner] was uncooperative, disruptive, unwilling to take instruction, disobedient and a distraction to staff and other Drug

Court participants." Response, Ex. 3, at 3. The appellate court found "no merit in the claim that his termination from the program was premature." Id.

The OCCA also rejected Petitioner's ineffective assistance of counsel claim. The court found Petitioner had not satisfied his burden under Strickland v. Washington, 466 U.S. 668 (1984), to show prejudice. The court found "[t]he record in this matter contains sufficient testimony and written documentation advising the district court of the extent of [Petitioner's] disability. [Petitioner] does not allege that he followed the terms of the Drug Court contract, nor is he able to show that he was terminated specifically for failing to maintain gainful employment. The evidence, while disputed by [Petitioner's] testimony, also reveals that he was terminated from two jobs during his drug court tenure for his inability to get along with others and for performing shoddy work. He was recommended for termination from the Drug Court program because of his uncooperative attitude, his refusal to participate, his unwillingness to accept responsibility for his actions, his disruptive influence on other Drug Court participants, his disrespectful attitude toward staff, as well as his inability to maintain gainful employment." Id. at 4.

With respect to Petitioner's third and fifth grounds for relief, the OCCA found "no evidence in the record to support either of these allegations and refuse to grant relief on this basis." With respect to Petitioner's claim in ground four that the termination order was vague and did not comply with Oklahoma's statutory requirements for a drug court termination, the OCCA found "nothing vague about the order, and find no evidence that [Petitioner] was denied due process. His tenure in the drug court program was replete with

rule violations, sanctions and a general unwillingness, according to his own admission, to take instructions or direction from others in authority over him." Id. at 5.

The OCCA described Petitioner's sixth claim of a Confrontation Clause violation as "claims that counselor Peggy Thompson's testimony included information about alleged program violations which she did not personally witness." Id. at 5. With respect to this claim, the court found that under its previous precedent "a probationer's right of confrontation is not the same as that granted defendants under the Sixth Amendment of the U.S. Constitution in criminal prosecutions, but is instead a right that arises from due process considerations. Accordingly, a probationer's right of confrontation is subject to 'relaxed due process standards' that may permit introduction of evidence that would not be admissible in an adversary criminal trial." Id. at 5-6. The court found that the evidence presented by Ms. Thompson "qualified as a business record under the hearsay exception allowing the presentation of such evidence" under Okla. Stat. tit. 12, § 2803(8). Id. at 6.

Further, the court found that "[a] review of the record also reveals that the State presented testimony from several persons who actually witnessed and reported the incidents contained in [Petitioner's] discharge progress notes. [Petitioner] had the opportunity to cross-examine each witness and did so at the termination hearing. We find no merit to the claim that [he] was denied his right to confront witnesses against him." Id. Lastly, the court found no merit to Petitioner's cumulative error claim due to the absence of findings of other errors.

In October 2012, Petitioner applied for post-conviction relief, raising eighteen grounds for post-conviction relief. Response, Ex. 4. The district court entered Post-Conviction

Findings in which the court addressed each of Petitioner's claims, found many of those claims were procedurally barred due to Petitioner's failure to raise the claims in his appeal, and denied relief. Response, Ex. 4A. Petitioner appealed this decision. Response, Ex. 5. On November 15, 2013, the OCCA issued a decision affirming the district court's denial of post-conviction relief. Response, Ex. 6.

As it did with Petitioner's appeal from the Drug Court Program termination, the OCCA carefully addressed each of Petitioner's claims, finding that many of the claims were procedurally barred from review because they could have been or were brought in his appeal. The court rejected the remaining claims as either meritless or on the basis of harmless error.

II. Exhaustion of State Court Remedies

Respondent contends that several of Petitioner's grounds for habeas relief are unexhausted and should be barred from judicial review on the basis of the anticipatory procedural default doctrine.

Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court, or demonstrate that there is an absence of available state remedies or that circumstances exist that render the state process ineffective to protect the petitioner's rights. 28 U.S.C. § 2254(b)(1). See O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999)(exhaustion requirement is satisfied when state prisoner has given state courts an opportunity to act on his claims before he presents those claims to federal court in a habeas petition). "For a federal court to consider a federal constitutional claim in an application for

habeas, the claim must be 'fairly presented to the state courts' in order to give state courts the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" Prendergast v. Clements, 699 F.3d 1182, 1184 (10th Cir. 2012)(quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). Where a habeas petitioner has not exhausted available state remedies, "[g]enerally a federal court should dismiss unexhausted claims without prejudice so that the petitioner can pursue available state-court remedies." Bland v. Sirmons, 459 F.3d 999, 1012 (10th Cir. 2006).

A habeas "petitioner bears the burden of demonstrating that he has exhausted his available state remedies." McCormick v. Kline, 572 F.3d 841, 851 (10th Cir. 2009)(quotation omitted). A federal habeas claim may be denied on its merits notwithstanding Petitioner's failure to satisfy the exhaustion requirement. 28 U.S.C. § 2254(b)(2).

III. Standard of Review of Constitutional Claims

Under the AEDPA, a federal court can grant habeas relief on exhausted claims only when the (1) state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The AEDPA directs courts to "ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)).

8

A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion that contradicts governing Supreme Court precedent or (2) reached a conclusion different from the Supreme Court on materially indistinguishable facts. Id. at 405-406, 413. A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003). Under this deferential standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Renico v. Lett, 559 U.S. 766, 773 (2010)(internal quotations and citation omitted).

"[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson, 542 U.S. 649, 652 (2004)(per curiam)(citations omitted). See Cullen v. Pinholster, __ U.S. __, 131 S.Ct. 1388 (2011)(federal habeas "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").

IV. Ground One

Petitioner asserts in Ground One of his Petition that "Drug Court Coordinator Ken Thiessen conspired with DARP Foundation Human Relations Director Mack Bentley to deprive Petitioner of Due Process protections of law." The gist of this claim is that a certain provision of the Oklahoma Drug Court Act, which Petitioner describes as "vigilent [sic]

supervision," was not satisfied by Mr. Thiessen.

Petitioner contends he raised this claim in his appeal. Yet, there is no similar claim included in Petitioner's appellate brief. Petitioner contends that he also raised this issue in his post-conviction application. However, no similar claim is found in Petitioner's post-conviction application. Even though this claim is not exhausted, it may be denied on its merits. With this claim, Petitioner has not stated a cognizable federal habeas claim.

By asserting that the provisions of the Oklahoma Drug Court Act were violated in connection with his Drug Court Program termination, Petitioner does not comprehend the nature and jurisdictional limits of the federal habeas statute, see, *e.g.*, Mabry v. Johnson, 467 U.S. 504, 507 (1984)(federal habeas relief available only if petitioner's custody is in violation of Constitution); Pulley v. Harris, 465 U.S. 37, 41 (1984)("A federal court may not issue the writ on the basis of a perceived error of state law."); Smith v. Phillips, 455 U.S. 209, 221 (1982)("A federally issued writ of habeas corpus . . . reaches only convictions obtained in violation of some provision of the United States Constitution. . . . Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.").

Petitioner's claim in Ground One asserts nothing more than an error under state law. "[A] mere error of state law," like the one alleged by Petitioner here, "is not a denial of due process." Engle v. Isaac, 456 U.S. 107, 121 n. 21 (1982)(internal quotation marks omitted). Hence, habeas relief with respect to Ground One should be denied.

## V. Grounds Two, Three, and Twelve

In Ground Two, Petitioner asserts that "Custer County District Attorneys Council and court officers are notified by Oklahoma Department of Mental Health and Substance Abuse Services (ODMHSAS) of newly discovered evidence that impeaches Petitioner's revocation proceedings." In Ground Three, Petitioner asserts "State Law Violation - Certification; Also Equal Protection of Law" as his ground for habeas relief. In Ground Twelve, Petitioner asserts that the prosecution could not rely on any program failure with respect to Petitioner's participation in the D.A.R.P. Foundation's treatment programy because the D.A.R.P. Foundation was not certified by the state's mental health department as a treatment provider.

Generously construing these vague claims, Petitioner is asserting that he could not be terminated from the Drug Court Program for failure to successfully complete the D.A.R.P. Foundation's treatment program because the D.A.R.P. Foundation was not certified by the state mental health department and state law required such certification for drug court participants.

Petitioner contends that he raised this claim in his post-conviction application. In his post-conviction application, Petitioner asserted in proposition three that D.A.R.P. Foundation was not certified by the Oklahoma Department of Mental Health and Substance Abuse Services and that his referral to this facility violated the Oklahoma Drug Court Act and denied him equal protection and due process. Response, Ex. 3, at 27-29. The district court found this claim was procedurally barred from review as it could have been asserted in Petitioner's appeal, and the OCCA affirmed this decision.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") "strictly limits a federal court's ability to consider issues on habeas review that the state court deemed procedurally barred." Hammon v. Ward, 466 F.3d 919, 925 (10th Cir. 2006). "It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" Cone v. Bell, 556 U.S. 449, 465 (2009)(quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991), and Lee v. Kemna, 534 U.S. 362, 375 (2002)).

If a particular claim presented in a habeas petition was "defaulted in state court on an independent and adequate state procedural ground," the merits of the procedurally-defaulted claim will not be addressed in the federal habeas proceeding "unless cause and prejudice or a fundamental miscarriage of justice is shown." Johnson v. Champion, 288 F.3d 1215, 1223 (10th Cir. 2002)(internal quotation marks omitted). Accord, Smith v. Workman, 550 F.3d 1258, 1274 (10th Cir. 2008). "The procedural default doctrine and its attendant cause and prejudice standard are grounded in concerns of comity and federalism and apply alike whether the default in question occurred at trial, on appeal, or on state collateral attack." Edwards v. Carpenter, 529 U.S. 446, 451 (2000)(internal citation and quotation marks omitted).

In its order, the OCCA relied on the court's well-established procedural bar rule codified at Okla. Stat. tit. 22, §§ 1086 and 1089. This rule is an independent and adequate ground for the OCCA's decision. See Welch v. Workman, 607 F.3d 674, 687 n. 4 (10th Cir.

2010)("Under Oklahoma law, claims previously raised and rejected are barred by res judicata. . . . Both the res judicata bar to claims previously rejected and the waiver rule for claims not previously raised . . . are included in Okla. Stat. tit. 22, §§ 1086 and 1089, and both are regularly and even-handedly applied by the state courts.")(internal quotation marks and citation omitted).

Petitioner procedurally defaulted the claims asserted in Ground Two, Ground Three, and Ground Twelve of the Petition. In his pleadings, Petitioner asserts that he has shown cause for the default because he was not aware of the absence of state certification until after his appellate brief was filed in the OCCA. "'Cause' must be 'something external to the petitioner, something that cannot fairly be attributed to him....'" Steele v. Young, 11 F.3d 1518, 1522(10th Cir. 1993)(quoting Coleman, 501 U.S. at 753). Petitioner alleges that he simply failed to discover the factual basis of his claim at the time of his appeal. This allegation does not demonstrate cause excusing the default.

Even assuming Petitioner could show cause for his state court procedural default, the claim lacks any legal merit. As the OCCA found in Petitioner's appeal of the Drug Court termination decision, Petitioner's "tenure in the drug court program was replete with rule violations, sanctions and a general unwillingness, according to his own admission, to take instructions or direction from others in authority over him." Response, Ex. 3, at 5. Further, the court found "[t]he evidence, while disputed by [Petitioner's] testimony, also reveals that he was terminated from two jobs during his drug court tenure for his inability to get along with others and for performing shoddy work. He was recommended for termination from the

13

Drug Court program because of his uncooperative attitude, his refusal to participate, his unwillingness to accept responsibility for his actions, his disruptive influence on other Drug Court participants, his disrespectful attitude toward staff, as well as his inability to maintain gainful employment." Id. at 4.

These factual findings are presumed correct, and Petitioner has not overcome the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Moreover, his claim that the first of the two treatment programs he participated in was not certified by the state mental health department raises purely an issue of state law, and such an error does not constitute a denial of due process. Therefore, Petitioner is not entitled to habeas relief concerning Ground Two, Ground Three, and Ground Twelve.

VI. Ground Four

In Ground Four, Petitioner contends that he was subjected to "multiple punishment" in violation of the Fifth Amendment. As support Petitioner contends that the evidence presented by the prosecution at his Drug Court termination hearing included all of his "previous sanctions as reason to terminate." Petitioner exhausted this claim by raising it in his state court appeal from the termination decision. He alleged as part of his fifth ground on appeal that "[i]t is also reversible error violating double jeopardy's multiple punishment prohibition to terminate drug court participation based upon violations for which one has already been punished by receiving drug court sanctions." Response, Ex. 1, at 43.

Petitioner's argument on appeal was that he had been sent to the treatment facilities at D.A.R.P. Foundation and New Hope of Mangum as a sanction for a positive urinalysis test

for alcohol. The argument, however, was not based on federal law, but on state court precedent interpreting the provisions of the Oklahoma Drug Court Act. The OCCA rejected the claim because the court could "find no evidence in the record to support" the claim. Response, Ex. 3, at 5.

Petitioner has raised nothing more than a state law issue directed toward the Oklahoma Drug Court Act's provisions and the OCCA's interpretation of the law. Therefore, he has failed to present a cognizable federal habeas claim, and he is not entitled to habeas relief concerning the issue raised in Ground Four.

## VII. Ground Five

Plaintiff labels his fifth ground for relief as follows: "Excessive Punishment, Performance Contract/Drug Court Judges Abuse Discretion to Conflict with Express Statute; Denying Hearing to Impose Loss of Liberty, 5th Amendment." The gist of this claim is not entirely clear. As best as it can be read, it appears Petitioner is attempting to challenge a sanction imposed upon him in 2009 in which he was detained in the Custer County Detention Center. This claim does not allege a constitutional deprivation, only a state law error, and Petitioner is not entitled to habeas relief concerning this claim, whether or not he exhausted the issue in the state courts.

## VIII. Ground Six

In Ground Six, Petitioner contends that he was denied due process in the Drug Court termination proceeding. As support for this claim, Petitioner asserts that the Oklahoma Drug Court Act requires the drug court to establish a schedule for the payment of fees unless the

participant is indigent. He alleges that "[i]n DC-09-5, Drug Court file, no Rule 8 order is executed, denying the notification requirement under 14th Amendment that Petitioner is allegedly deliquent [sic]."

In his post-conviction application, Petitioner raised a similar claim that he was terminated from Drug Court for non-payment of court costs, fines, and fees without any hearing to determine his indigence and inability to pay, in violation of due process. The OCCA found that "Petitioner reached this conclusion on the basis that the Custer County District Court Clerk 'declares, 'No Rule 8 Orders were issued for Petitioner during his tenure in drug court.'" Response, Ex. 6, at 3. The appellate court noted that the district court had apparently interpreted the claim to raise an "issue of scheduling payments under Rule 8 on Petitioner's release from prison" and found that it did not present grounds to challenge his termination. Id. The OCCA found that any error in the district court's interpretation of the claim was "harmless" and that Petitioner had "simply present[ed] another issue that [he] raised or could have raised in his direct appeal. As such, it would likewise be a claim that is procedurally barred." Id. at 4.

Petitioner procedurally defaulted the claim asserted in Ground Six of the Petition. In his pleadings, Petitioner does not assert cause for his procedural default or demonstrate prejudice. Nor has he shown that a fundamental miscarriage of justice will result from the Court's failure to review his procedurally-defaulted claim. Therefore, he is not entitled to habeas relief concerning this claim.

16

## IX. Ground Seven

In Ground Seven, Petitioner asserts that "newly discovered evidence, conspiracy by Drug Court Judge Jill Weedon to Drug Court Team member and Assistant District Attorney Juan Garcia to intentionally breach Petitioner's contract after written notice of disability." Petition, at 18. Although, again, the gist of this claim is not entirely discernible, Petitioner contends that he exhausted this claim by raising it in proposition two in his post-conviction application. In his second proposition in his post-conviction application, Petitioner asserted that he was denied due process because he "was not given the minimum requirement of written notification of a program rule violation" with respect to his participation in the D.A.R.P. Foundation or the New Hope of Mangum treatment facilities. The district court found this claim was procedurally barred from review as it could have been asserted in Petitioner's appeal, and the OCCA affirmed this decision.

Petitioner procedurally defaulted the claim asserted in Ground Seven of the Petition. In his reply, Petitioner does not assert cause for his procedural default or demonstrate prejudice. Nor has he shown that a fundamental miscarriage of justice will result from the Court's failure to review his procedurally-defaulted claim. Therefore, Petitioner is not entitled to habeas relief concerning Ground Seven.

## X. Ground Eight

In Ground Eight, Petitioner asserts that he was denied effective assistance of counsel during his Drug Court Program termination hearing. As support for this claim, Petitioner asserts that his counsel did not investigate the evidence or present relevant evidence at the

termination hearing. He vaguely describes this information as "all of the DARP Foundation information." Petitioner also alleges in Ground Eight that his "counsel allowed inadmissable evidence into record under Petitioner's religious beliefs, by allowing prosecution to administer religious testing."

Petitioner asserted in his appeal of the termination decision that he was denied effective assistance of counsel during the termination hearing. He asserted that his attorney "did not present a well-founded defense. Counsel failed to subpoena or produce crucial documents, which would have provided independent sources of corroboration for Appellant's testimony." Response, Ex. 1, at 27. He referred to a "Joint Petition" in a state worker's compensation case and an in-take form completed prior to his entry into treatment at the D.A.R.P. Foundation.

The OCCA reviewed this claim under the governing Strickland standard and found that Petitioner had not shown prejudice as a result of any deficiencies in his counsel's assistance during the termination proceeding. The court reasoned that "[t]he record in this matter contains sufficient testimony and written documentation advising the district court of the extent of [Petitioner's] disability. [Petitioner] does not allege that he followed the terms of the Drug Court contract, nor is he able to show that he was terminated specifically for failing to maintain gainful employment. The evidence, while disputed by [Petitioner's] testimony, also reveals that he was terminated from two jobs during his drug court tenure for his inability to get along with others and for performing shoddy work. He was recommended for termination from the Drug Court program because of his uncooperative attitude, his

refusal to participate, his unwillingness to accept responsibility for his actions, his disruptive influence on other Drug Court participants, his disrespectful attitude toward staff, as well as his inability to maintain gainful employment." Response, Ex. 3, at 4.

With respect to Petitioner's specific ineffective assistance of counsel claim directed to his attorney's failure to object to alleged "religious" questioning during the termination hearing, "Petitioner did not assert this claim in his appeal of the termination decision. Petitioner first raised this issue in his state court post-conviction application. Nevertheless, the district court found that he had unsuccessfully raised this claim in his appeal. The OCCA did not address this specific Sixth Amendment claim in the order affirming the district court's decision, but merely found that Petitioner was not entitled to review of claims that had been raised in the appeal or that had been procedurally waived by failing to bring them in the appeal. In the height of precaution, this Court should deem this claim exhausted. See Cone v. Bell, 556 U.S. 449, 466 (2009)(When a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review.").

Petitioner has not addressed his burden under 28 U.S.C. § 2254(d). In his reply, Petitioner presents only meandering allegations related to certain documents that he believes his attorney did not have access to prior to the termination hearing. Because Petitioner has not demonstrated, and there is no evidence showing, that the state court's decision rejecting the Sixth Amendment claim was contrary to or an unreasonable application of the Strickland standard, Petitioner is not entitled to habeas relief with respect to the issue raised in Ground

Eight.

XI. <u>Ground Nine</u>

In Ground Nine, Petitioner asserts that he was denied effective assistance of appellate counsel.  In support of this claim, Petitioner contends that he submitted "genuine, material, exculpatory facts" to his appellate counsel in December 2011, although he admits that the appellate brief in his appeal was filed well before this date.  Petitioner contends that his appellate counsel also presented "inadmissable evidence" in the appeal but he does not cogently explain the nature of that evidence.

Petitioner contends in his reply that he raised this issue in his post-conviction application.  But he then argues that the court clerk's office in Custer County failed to submit this claim with his post-conviction appeal.  However, the OCCA found that Petitioner had presented a claim of ineffective assistance of appellate counsel in the appeal but he had not presented the claim in the district court.  Citing the court's own procedural rules, the court stated that it would not consider issues or evidence that had not been presented to or raised in the district court. Response, Ex. 6, at 5-6.

The OCCA clearly found that the issue was procedurally defaulted and applied an independent and adequate state ground for its decision.  Thus, Petitioner procedurally defaulted the claim asserted in Ground Nine of the Petition.  In his reply, Petitioner does not assert cause for his procedural default or demonstrate prejudice.  Nor has he shown that a fundamental miscarriage of justice will result from the Court's failure to review his procedurally-defaulted claim.  Therefore, Petitioner is not entitled to habeas relief concerning

Ground Nine.

## XII. Ground Ten

In Ground Ten, Petitioner contends that his drug court termination was an abuse of discretion and due process violation because he was not physically capable of meeting the employment requirements of the D.A.R.P. Foundation.

This issue was addressed in Petitioner's appeal in his first proposition of error. In that claim, Petitioner asserted that his discharges from the treatment facilities at D.A.R.P. Foundation and New Hope of Mangum were not valid reasons to terminate him from the Drug Court Program because he was not "physically, spiritually, or emotionally" compatible with the treatment programs. Response, Ex. 1, at 15-21. The OCCA rejected this claim, finding that Petitioner admitted he was aware of the terms and conditions of the Drug Court Program when he agreed to participate in the program. The court further found that "[g]iven numerous opportunities to comply with the terms and conditions of the program, [Petitioner] was sanctioned at least twice during the duration of his program participation. He also acknowledges that he was given several chances to complete the program after being terminated from three jobs, when program policy dictated that termination should result upon being terminated from one job. The record is replete with testimony and reports that [Petitioner] was uncooperative, disruptive, unwilling to take instruction, disobedient and a distraction to staff and other Drug Court participants." Response, Ex. 3, at 3. Petitioner has not overcome the presumption of correctness attached to these factual findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Assuming that Petitioner was entitled to "some orderly process" prior to his termination from the Drug Court Program, Morrissey v. Brewer, 408 U.S. 471, 482 (1972), Petitioner received all of the process to which he was due. In Morrissey, the Supreme Court held that in the case of a parolee facing a revocation of his or her parole, "[w]hat is needed is an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." Id. at 484. "The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." Id. at 488.

The "minimum requirements of due process" in this respect include "written notice of the claimed violations of parole," " disclosure to the parolee of evidence against him," "opportunity to be heard in person and to present witnesses and documentary evidence," "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)," "a 'neutral and detached' hearing body," and "a written statement by the factfinders as to the evidence relied on and treasons for revoking parole." Id. at 488-489. "[T]he process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." Id. at 489.

A copious review of the state court record reveals that Petitioner was given all of the procedural rights to which he was due. Petitioner received notice of the grounds on which

the termination was being sought. Four witnesses were presented by the State, and each of these witnesses testified concerning Petitioner's multiple violations of his Drug Court performance agreement. Petitioner was represented by counsel at the hearing, and his counsel cross-examined each of the witnesses presented by the prosecution. Petitioner presented three witnesses in his defense, including his own testimony.

Moreover, there was at least a "preponderance of the evidence" that Petitioner had violated the terms of his drug court contract, in light of the testimony presented at the hearing and the OCCA's factual findings in his appeal. See Hagar v. State, 990 P.2d 894, 898 (Okla. Crim. App. 1999)(holding that "preponderance of the evidence" standard was appropriate burden of proof for revocation from Drug Court). Hence, Petitioner is not entitled to habeas relief concerning Ground Ten.

XIII. Ground Eleven

In Ground Eleven, Petitioner asserts as his ground for habeas relief: "Newly Discovered Evidence; Denied Opportunity to Present All Information to Defense Attorney's as Required by Oklahoma Drug Court Act." As support for this claim, Petitioner describes a letter dated September 22, 2009, that he sent to the Drug Court Program coordinator, Mr. Thiessen, in which he allegedly indicated he could not complete the "treatment [at the D.A.R.P. Foundation] due to disability." Petitioner contends that the letter was not provided to him until 2013, and that it "is genuine and exculpatory in nature."

Petitioner contends that he exhausted this claim by raising it in his post-conviction application. In Petitioner's post-conviction application, Petitioner asserted in his fourth

proposition that "Custer/Washita County court officials and Custer County District Attorney's Council suppressed exculpatory evidence from Petitioner and his appellate counsel during the District Appeal process." Response, Ex. 4, at 21. However, this claim was based on the purported absence of state certification of the D.A.R.P. Foundation as a drug treatment facility. This post-conviction claim did not exhaust his available state court remedies concerning Ground Eleven.

In his appeal, Petitioner asserted that he was prematurely terminated from the Drug Court Program and that the district court abused its discretion in terminating him from the Drug Court program because, in part, his "Discharges from the Treatment Facilities were Not Valid Reasons to Terminate Him from the Drug Court Program." Response, Ex. 1, at 22 (pleading page number 15). As support for this claim, Petitioner asserted that he "even wrote to Drug Court coordinator Ken Thiessen in September of 2009 about how he had been placed in a job that was too physically demanding on his back and exceeded his weight-lift restrictions." Id. at 23 (pleading page number 16)(citing Original Record III - 34-35).

Petitioner did not exhaust available state court remedies concerning the claim asserted in the Petition. See Castille v. Peoples, 489 U.S. 346, 351 91989)(exhaustion requirement is satisfied if federal claim was "fairly presented" to the state courts). Petitioner alleges that he was unable to exhaust state court remedies because he was not aware of the purported letter until 2013, a claim that is not plausible given the gist of the claim itself. In his Reply, Petitioner again contends that he was unaware of the document until 2013. However, the letter appears in the original record in his criminal cases. Moreover, Petitioner's appellate

counsel referred to the letter in his appellate brief in connection with an unrelated issue.

Despite his failure to exhaust available state court remedies concerning this claim, the claim has no legal merit. Petitioner provides no legal support for his claim in Ground Eleven. However, his reference to "exculpatory evidence" that was allegedly not provided to him in the Drug Court termination proceeding indicates he is relying upon Brady v. Maryland, 373 U.S. 83 (1963).

In Brady, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. Petitioner does not assert that he sought and was denied access to the letter. Further, Petitioner testified at the Drug Court termination hearing that he had previously alerted Mr. Thiessen to his back injury and prior surgery. TR 71. The letter appears in the original record in Petitioner's criminal cases. As the OCCA found in Petitioner's appeal, "[t]he record in this matter contains sufficient testimony and written documentation advising the district court of the extent of [Petitioner's] disability." Response, Ex. 3, at 4. Thus, no exculpatory evidence was withheld from Petitioner, and he is not entitled to habeas relief concerning Ground Eleven.

## XIV. Ground Thirteen

In Ground Thirteen, Petitioner asserts: "Drug Court Officials Concede to Incompetency of Law, Denying Equal Protection and Due Process of Law to a Fair Hearing." Petitioner's lengthy, obtuse supporting statement is filled with hyperbole and unsupported

assumptions but no cogent argument. Petitioner alleges that he exhausted state court remedies by asserting this "claim" in his post-conviction application. He does not indicate which of the eighteen grounds for relief in his post-conviction application included this "claim." Whether or not Petitioner exhausted state court remedies concerning this claim, the findings made with respect to Ground Ten are equally applicable and incorporated by reference here. Petitioner is not entitled to habeas relief concerning Ground Thirteen.

XV. Ground Fourteen

In Ground Fourteen, Petitioner alleges "Coercion of Religion, Entanglement." Again, the factual and legal bases for this claim are difficult to discern from Petitioner's vague assertions. It appears that Petitioner is asserting that he could not be found to have violated the terms of his Drug Court Program performance contract because the first inpatient drug treatment program he was ordered to attend, the D.A.R.P. Foundation, had established rules requiring participants to attend religious services and cut their hair, which he claims violated his First Amendment rights.

Petitioner contends that he raised this claim in his post-conviction application. In the third proposition in his appeal, Petitioner asserted that his termination from the Drug Court Program "based on religious grounds violated [his] right to due process and was an abuse of discretion." Response, Ex. 1, at 2. This claim, however, related to the district court's statements during the termination hearing, and not to the claim asserted here of an alleged denial of First Amendment rights as a result of the rules prescribed by the D.A.R.P. Foundation treatment program.

In proposition one in his appeal, he asserted that his discharges from the treatment facilities were not valid reasons to terminate him from the Drug Court Program, and a portion of this argument was based on his incompatibility with the D.A.R.P. Foundation treatment program because D.A.R.P.'s requirements to attend Christian church services and to cut his hair "went against his Sikh religious faith." Response, Ex. 1, at 16. It appears Petitioner has exhausted this claim.

Additionally, in his post-conviction application, Petitioner asserted in his thirteenth proposition that the "Custer-Washita County Drug Court team members have failed to follow procedural due process required as statutory mandate to ensure 'vigilant supervision and monitoring of procedures.'" Response, Ex. 4, at 41. In the supporting facts portion of this claim, Petitioner asserted that the Drug Court's order that he attend the D.A.R.P. Foundation's treatment program violated his "right under the Establishment Clause; where a government entity (or political subdivision's order) cannot coerce religion upon a participant which Petitioner does not profess." Id.

Petitioner cited a Ninth Circuit Court of Appeals decision, Inouye v. Kemna, 504 F.3d 705 (9th Cir. 2007), in which the appellate court addressed a 42 U.S.C. § 1983 appeal by a parolee in which the parolee argued that a parole officer violated his First Amendment rights by requiring him to attend a drug treatment program requiring participation in AA/NA meetings. The court found in the decision that it was "essentially uncontested that requiring a parolee to attend religion-based treatment programs violates the First Amendment." Id. at 712. The district court found that Petitioner had raised a claim of denial of his religious

freedom rights in his appeal and found the issue was procedurally barred from review. The OCCA did not specifically address this issue and found that the issues raised by Petitioner, other than those specifically addressed in the order, had been procedurally waived either by raising them on appeal or by failing to raise them on appeal.

Whether or not Petitioner exhausted the claim, Petitioner's claim of a First Amendment violation stemming from his voluntary participation in the Drug Court Program is without legal merit. Petitioner raised an identical religious discrimination claim in a 42 U.S.C. § 1983 action filed in this Court, the claim was denied, and the Tenth Circuit Court of Appeals affirmed the district court's judgment. Malipurathu v. Jones, 563 Fed. Appx. 646 (10th Cir. 2014)(unpublished op.).

Furthermore, the record demonstrates that Petitioner was not terminated from the Drug Court Program due to his refusal to participate in the program. Petitioner raised the issue of the D.A.R.P. Foundation's religious services requirement at his termination hearing. However, during the hearing Petitioner admitted that he was removed from one position at the D.A.R.P. Foundation because he "had a conflict with another participant at the facility" and that he was removed from another position because his employer felt his work was "shoddy at best." TR 76-77. Petitioner admitted that he was removed from another position after he "quit participating" because he perceived he was being harassed. TR 91. Petitioner admitted that when he went to the treatment programs he was not mentally prepared to take instructions from people in authority. TR 83. Petitioner also admitted that he does "not convent[ion]ally practice the same as everybody else in the Sikh religion." TR 87.

Petitioner was terminated from the Drug Court Program for numerous reasons, as found by the OCCA, and none of those reasons were related to the D.A.R.P. Foundation's religious services requirement. Petitioner is not entitled to habeas relief concerning the claim in Ground Fourteen.

XVI. Ground Fifteen

In Ground Fifteen, Petitioner alleges "New Evidence, Ambiguity of Contract Terms" as his ground for relief. In this claim, Petition again repeats his allegation that he could not be terminated from the Drug Court Program because of his "disability" and that the Drug Court Program performance contract he signed could not be used against him in the termination proceeding. The ground, whether or not Petitioner exhausted his state court remedies, does not present a cognizable federal habeas claim.

These were Petitioner's third and fourth felony convictions, and Petitioner entered into a plea agreement that was not ambiguous as to the result if he failed to complete the Drug Court Program. After finding that he had failed to complete the Drug Court Program, the district court sentenced Petitioner in accordance with the plea agreement. Prior to sentencing Petitioner, the district court heard extensive testimony from treatment providers at the two programs Petitioner attended as part of the Drug Court Program. Petitioner's counsel presented evidence in his defense, including Petitioner's testimony, and cross-examined the prosecution's witnesses. The district court explained that Petitioner had violated the rules of the Drug Court Program and that his inability to follow the rules of the program was the reason for his termination. The court reflected on Petitioner's penchant for determining

"what you think the rules are, . . . even . . with your own religion." TR 108. The court advised Petitioner that his inability to follow rules would "do nothing but create you problems down the road." Id. The OCCA determined that the district court did not abuse its discretion or violate Petitioner's Sixth or Fourteenth Amendment rights in terminating Petitioner from the Drug Court Program and sentencing him. Petitioner has not demonstrated that the OCCA's decision affirming Petitioner's termination and sentence was contrary to or an unreasonable application of governing Supreme Court precedent. Therefore, Petitioner is not entitled to habeas relief concerning the claim in Ground Fifteen.


## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by _____ November 12th, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed

herein is denied.

ENTERED this ___23rd___ day of ___October___, 2014.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE